# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEONTA KYLES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 11-cv-05216 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| LATONYA WILLIAMS, PARTHASARTHI | ) |
| GHOSH, JOSEPH SHEEHY, DAVID | ) |
| BARNES, WENDY OLSON-FOXON, and | ) |
| ANGELIQUE MATUZA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deonta Kyles claims that while in the custody of the Illinois Department of Corrections ("IDOC") he was denied proper medical treatment for his injured knee. He alleges that the medical personnel at his correctional facility were deliberately indifferent to his medical needs to a degree that violated his constitutional right to be free from cruel and unusual punishment and thus seeks damages from them pursuant to 42 U.S.C. § 1983. Before the Court are two motions for summary judgment—one filed by Defendants Parthasarthi Ghosh and LaTonya Williams (Dkt. No. 206) and the other by Defendants David Barnes, Wendy Olson-Foxon, and Joseph Sheehy (Dkt. No. 224). For the reasons detailed below, both motions are granted.

## FACTUAL BACKGROUND

Unless otherwise indicated, the following facts gleaned from the parties' summary judgment filings[1] are undisputed.

---

[1] These include the parties' submissions under Local Rule 56.1 (N.D. Ill.). Local Rule 56.1 "is designed, in part, to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in

At the time of the events at issue, Kyles was an inmate at IDOC's Stateville Correctional Center ("Stateville"). (Pl.'s Rule 56 Resp. ¶ 1, Dkt. No. 221.) He injured his knee while playing basketball there in May 2008. (*Id.* ¶ 14.) Stateville medical officials referred Kyles to the orthopedic clinic at the University of Illinois at Chicago, where he underwent surgery in June 2009 to repair a torn meniscus and again in September 2009 to repair a torn anterior cruciate ligament. (*Id.*) After his second surgery, Kyles received physical therapy at Stateville on September 29, 2009 and subsequently on October 1, 6, 8, 13, 15, and 20. (*Id.* ¶ 37.) He was then directed to continue a home exercise program on his own. (*Id.* ¶ 40.) It is not clear from the record whether he attended physical therapy sessions after October 20, 2009. (*See id.* ¶ 41.)

Kyles returned to the Stateville health care unit on May 26, 2010 and reported that he had been doing knee bends with weights two days earlier when something "popped" in his knee. (*Id.* ¶ 43.) He saw Defendant LaTonya Williams, a physician's assistant, who prescribed ice treatment, Ibuprofen pain medication, and a knee support, and also directed him to discontinue any exercises. (*Id.* ¶¶ 3, 43.) Kyles saw Williams again on July 23, 2010 and complained that his knee was "locking up." (*Id.* ¶ 44.) She extended his Ibuprofen schedule for two months. (*Id.*)

According to Kyles, between August 2010 and November 2010, he wrote letters and other requests for medical attention to Defendant Parthasarthi Ghosh, Stateville's medical director. (Second Am. Compl. ¶¶ 6, 28, Dkt. No. 195.) He further claims that Defendants David

---

determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (internal quotation marks and citation omitted). Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (internal quotation marks and citation omitted); *see also* L.R. 56.1(b)(3)(A). Finally, Local Rule 56.1(b)(3)(c) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate statement . . . of any additional facts that require the denial of summary judgment." *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir. 2012) (internal quotation marks and citation omitted).

Barnes, Angelique Matuza, Wendy Olson-Foxon, and Joseph Sheehy, medical personnel at Stateville, were responsible for collecting and forwarding the requests. (*Id.* ¶¶ 7, 35.) Kyles claims that despite his multiple requests, Defendants denied him access to Stateville's physical therapy facilities. (*Id.* ¶ 36.)

On November 5, 2010, Kyles sent an emergency grievance form to Stateville warden Marcus Hardy.[2] (Second Am. Compl. Ex. 7, Dkt. No. 195-7.)[3] On the form, Kyles stated that he was "only allowed to attend Physical Therapy Sessions for an additional 3 weeks before being taken off the call list without proper notice or reason." (*Id.*) He said that some days his knee was so sore that he could barely walk. (*Id.*) Kyles requested that he "be seen either for Sick Call or put back on the call list for Physical Therapy Sessions immediately." (*Id.*)

Hardy's notation on the same form indicated that the claim of emergency was unsubstantiated and that Kyles should submit his complaint through the normal grievance process. (*Id.*) Kyles sent his grievance to IDOC's Administrative Review Board. (*Id.*) The Administrative Review Board returned Kyles's form to him with the addition of a cover memo dated December 6, 2010. (*Id.*) The cover memo advised Kyles that to appeal he would have to provide a grievance report along with the responses from Hardy and a "Grievance Officer." (*Id.*)

Kyles filed another grievance on July 1, 2011. (Second Am. Compl. Ex. 12, Dkt. No. 195-13.) That grievance stated that he was "kicked out of physical therapy" after 30 days despite

---

[2] Hardy was dismissed as a defendant on February 16, 2013. (Dkt. No. 115.)

[3] Copies of Kyles's November 5, 2010 and July 1, 2011 grievance forms were not included with the parties' filings for the summary judgment motions currently under the Court's consideration. Defendants Ghosh and Williams included a version of the former grievance as an exhibit to their prior summary judgment motions and have represented that such exhibits would be refiled upon the Court's request. (Defs.' Rule 56 Stmt. at 3 n.1, Dkt. No. 207.) The Court observes that the complete grievance forms have been included in the record as attachments to the Second Amended Complaint (Dkt. Nos. 195-7, 195-13), and the parties have not disputed the authenticity, accuracy, or completeness of those attachments. The Court will consider the grievance forms attached to the complaint without the necessity of an additional filing.

3

having been told by his surgeon that he would receive therapy "for at least a year." (*Id.*) The grievance counselor responded that Kyles had been referred to the medical director for re-evaluation but had not yet been seen. (*Id.*) The record presented to the Court does not indicate that Kyles, the grievance counselor, or anyone else took any further action on this grievance. Kyles instead filed the present lawsuit, alleging that all of the Defendants were deliberately indifferent to his serious medical needs.

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 888 (7th Cir. 2011). In assessing whether the movant is entitled to judgment as a matter of law, all reasonable inferences from the evidence presented must be drawn in favor of the nonmoving party. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). However, to survive a summary judgment motion, the nonmovant must show the evidence he has that would convince a trier of fact to accept his version of events. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). "Summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005)).

Defendants argue that Kyles's claims are barred because he failed to exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA provides that no action with respect to prison conditions shall be brought under § 1983 "or any other Federal law" by a prisoner "until such

4

administrative remedies as are available are exhausted." *Id.* In this case, IDOC's administrative procedures required an initial contact with a counselor, the filing of a written grievance, review of the grievance by a grievance officer, submission of the grievance to the prisoner's warden or other chief administrative officer, and an appeal to IDOC's Administrative Review Board. *Burrell v. Powers,* 431 F.3d 282, 284 (7th Cir. 2005) (citing Ill. Admin. Code Tit. 20, § 504.800). A prisoner's failure to pursue a grievance through the final review stage constitutes a failure to exhaust that requires dismissal of the unexhausted claim without prejudice. *Id.* at 285. If a plaintiff exhausts his administrative remedies as to some claims but not others, the claims for which he has exhausted his remedies survive. *Jones v. Bock,* 549 U.S. 199, 220-24 (2007).

IDOC's procedures also offer an emergency procedure by which a prisoner may forward a grievance directly to the chief administrative officer who, upon determining that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the prisoner, shall direct the grievance to be handled on an emergency basis, expedite processing of the grievance, and respond to the prisoner indicating what action shall be or has been taken. Ill. Admin. Code Tit. 20, § 504.840. A prisoner whose emergency grievance has been denied direct review by the warden and not given subsequent review need not resubmit his grievance through the ordinary grievance process to satisfy the exhaustion requirement. *Glick v. Walker,* 385 Fed. Appx. 579, 583 (7th Cir. 2010) (citing *Thornton v. Snyder,* 428 F.3d 690, 694 (7th Cir. 2005)).

In the present case, Kyles asked for a direct review of his November 5, 2010 grievance by Hardy, his warden, on an emergency basis. Hardy denied Kyles's request and the Administrative Review Board declined to address the substance of the grievance. Kyles was not obligated to pursue his grievance further before bringing his claims here. Although Kyles argues that he filed other grievances, he does not suggest that any other than his November 5, 2010 emergency

5

grievance was pursued to exhaustion. His claims in this Court are therefore limited to those arising from the November 5, 2010 emergency grievance and his other claims are dismissed without prejudice.[4]

Kyles's claim concerns the alleged early termination of his physical therapy and the failure to return him to that therapy or otherwise treat his knee. The Eighth Amendment to the United States Constitution, through the Fourteenth Amendment, imposes a duty upon states to provide adequate medical care to incarcerated individuals. *Johnson v. Doughty,* 433 F.3d 1001, 1010 (7th Cir. 2006). State officials violate that constitutional provision when they display deliberate indifference to the serious medical needs of prisoners. *Id*. Under the Eighth Amendment, a prisoner's "medical need is sufficiently serious to require the attention of prison officials if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012); *see also McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)).

Moreover, a plaintiff alleging inadequate medical care must demonstrate more than a serious medical need and the defendant's deliberate indifference to it. He also must show a causal link between his injury and the defendant's conduct. "No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing

---

[4] As Kyles's other alleged grievances appear to have addressed the same denial of treatment and sought the same relief, this limitation does not appear to be material.

evidence that the failure caused injury or a serious risk of injury." *Jackson v. Pollion,* 733 F.3d 786, 790 (7th Cir. 2013). A plaintiff seeking relief for an Eighth Amendment violation based on delayed medical treatment must offer "verifying medical evidence" that the delay, rather than his underlying injury, caused him harm. *Id.* (citing *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007)). In the absence of such evidence, summary judgment for the defendant is appropriate. *Id.*

In support of his claim, Kyles cites testimony by Dr. Mark Hutchinson, the orthopedic surgeon who repaired his knee, as evidence of the detrimental effects of the premature termination of his physical therapy. At his deposition, Hutchinson was advised that his colleague, Dr. Tracy Dilica, had recommended an "extensive setup" at Stateville for Kyles's rehabilitation and that physical therapy would make "all the difference" in his recovery; and Hutchinson responded that these statements were not different from his own views on the importance of post-operative physical therapy. (Hutchinson Dep. at 27-29, Dkt. No. 166.) Hutchinson further testified that his routine protocol for patients after ACL surgery calls for a minimum of four months of physical therapy. (*Id.* at 34.)

Hutchinson also explicitly stated that his protocol requires an appropriate form of exercise, not necessarily the participation of a physical therapist:

> The rehabilitation – you have to break down rehabilitation which means work on range of motion, work on strength, work on power, conditioning and agility. Does that require a physical therapist? Not really. I have athletic trainers do it all of the time with my UIC athletes that aren't physical, that aren't physical therapists by definition.

(*Id.* at 29.) And when asked if a patient with Kyles's injury could progress properly with only three weeks of physical therapy, Hutchinson answered:

> I wouldn't have enough information based on that statement. If I had, if I had three or four weeks of rehabilitation and had good instruction to that after that time because I was going somewhere that couldn't do physical therapy, but I knew how to do the thing, I would have -- 90 percent of the time I would still

7

> have a good result. So you don't necessarily, it's not the magic of physical
> therapy, it's the magic of doing the exercises, that's the difference. . . . But the
> question is, is can you still get a good result if you have three to four weeks of
> formal physical therapy but the rest you do on your own? Yes, you could still
> have a good result.

(*Id.* at 37-38.) Hutchinson did not examine Kyles after October 2009, and he would not speculate as to the cause of the 2010 "pop" and pain symptoms of which Kyles complained. (*Id.* at 39, 42-43.) He further stated that post-operative pain could also be caused by damage from the original injury or ineffectiveness of the repair surgery, rather than failure of rehabilitation. (*Id.* at 45.)

Hutchinson's testimony cannot be construed as evidence that the allegedly premature cessation of Kyles's physical therapy and the delay in seeing a physician caused the pain or the knee-locking for which Kyles seeks relief. Kyles offers no other medical evidence that would support an inference that his injury was caused by the cessation of his therapy or his subsequent lack of treatment, as opposed to his original injury or the ineffectiveness of his surgery. In the absence of such medical evidence, Kyles cannot establish the required link between his alleged injury and Defendants' conduct. Summary judgment in Defendants' favor is therefore appropriate.

On a final note, the Court observes that Kyles's original complaint was filed on August 1, 2011 (Dkt. No. 1), his First Amended Complaint was filed on May 16, 2012 (Dkt. No. 2012), and his current complaint, the Second Amended Complaint, was filed on May 6, 2014 (Dkt. No. 195). Yet, to date, no document reflecting service upon Defendant Matuza of any version of the complaint appears on the docket, and Kyles has not asked for an extension of the time to serve her. Accordingly, pursuant to Federal Rule of Civil Procedure 4(m), Kyles is hereby notified that his claims against Matuza will be dismissed without prejudice unless he files a motion for an

extension of time to serve her, demonstrating good cause for his prior failure to do so, within seven days.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment filed by Defendants Ghosh and Williams and Defendants Barnes, Olson-Foxon, and Sheehy are granted. In addition, pursuant to Federal Rule of Civil Procedure 4(m), Kyles is hereby notified that his claims against Defendant Matuza will be dismissed without prejudice unless he files a motion for an extension of time to serve her, demonstrating good cause for his prior failure to do so, within seven days of this Memorandum Opinion and Order.

ENTERED:

Dated: September 17, 2015

_____
Andrea R. Wood
United States District Judge